UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| NordAq Energy, Inc., | 3:16-CV-00267 JWS |
| Plaintiff, | ORDER AND OPINION |
| vs. | [Re: Motion at docket 39] |
| Paul L. Devine; Andrew Allister Knott; Lothian Investment Partners Limited; and Golden Eagle Petroleum Limited; | |
| Defendants. | |

## I. MOTION PRESENTED

At docket 39, Defendant Paul Devine (Devine) asks the court to vacate the clerk's entry of default at docket 18.[1] Plaintiff NordAq Energy, Inc. (NordAq) opposes the request at docket 74. Devine replies at docket 80. Oral argument was not requested and would not be of assistance to the court.

---

[1]Docket 39 also requests that the court stay the motion for default judgment filed at docket 33, but the court has already done so. *See* docs. 42, 70.

## II. BACKGROUND

NordAq filed this action against Devine on November 28, 2016, charging Devine with breaches of fiduciary and legal duties, including the misappropriation of millions of dollars from NordAq. It served Devine, a citizen of the United Kingdom, on December 22, 2016, by process server at Devine's last known London address, which the parties refer to as the Brookford House. The complaint was hand-delivered to Devine's wife Linda at the Brookford House and a copy was left in the mailbox. At the time the complaint was delivered to the Brookford House, Devine was not staying there, but he was in London and staying at a local hospital for the purpose of receiving chemotherapy treatment for cancer. He later learned about the complaint against him and contacted a NordAq representative to discuss the allegations against him. He did not file a response with the court, but he continued discussing the claims with NordAq. On February 14, 2017, during the parties' discussions, the representative informed Devine that NordAq would be filing for default, and it did so on February 16, 2017. The clerk entered the default that same day.[2] About one month later, at docket 33, NordAq moved for default judgment. One week later, Devine filed this motion to vacate the entry of default and stay the motion for default judgment.

Devine argues that NordAq did not properly serve the complaint and therefore contends that the court did not have jurisdiction to grant the entry of default against him. His argument is based on his assertion that the Brookford House is not his residence and has not been for more than two decades and that he did not maintain a permanent residence in London but rather was staying at a hospital there to receive medical treatment, a fact which NordAq was aware of at the time it attempted service. Alternatively, he argues that the entry of default can be vacated for good cause under Rule 55 of the Federal Rules of Civil Procedure.

---

[2]Doc. 18.

-2-

The court initially granted Devine's request at docket 42 after having misread a docket note which led the court to conclude that the time for responding to the motion had run. NordAq filed a motion for reconsideration. In the meantime, Devine filed an answer and later an amended answer with a counterclaim. Thereafter, at docket 70, the court rescinded its order at docket 42 and allowed NordAq a chance to challenge Devine's request to set aside the entry of default.

### III. DISCUSSION

**A.  Service under Rule 4**

Devine contends that the entry of default entered against him is void because he was not properly served with process. Rule 4 of the Federal Rules of Civil Procedure governs service of process. "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Rule 4."[3] When there is substantial compliance with Rule 4, the court must liberally construe the rule to uphold service in cases where defendant has received sufficient notice of the complaint.[4]

Under Rule 4(f)(1), service of process upon individuals in foreign countries may be effected by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention. Here, both the United States and the United Kingdom are signatories to the Hague Convention, and thus service of process by an American plaintiff on an English defendant in England is governed by the Hague Convention.[5] "The primary means by which service is accomplished under the Convention is through a receiving country's 'Central Authority.'"[6] The Central Authority

---

[3] *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988).

[4] *Travelers Cas. & Surety Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009).

[5] *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).

[6] *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

-3-

must effect service by the receiving country's prescribed methods if the documents comply with certain requirements set by the receiving country.[7] It can also object to documents that do not comply with such requirements.

Here, NordAq used the United Kingdom's Central Authority to effectuate service. David A. Kramer, a process server in the United Kingdom, authorized for service of process under the Hague Convention, delivered NordAq's summons and complaint against Devine to his usual or last known London address. NordAq provided the certificate of service from the Central Authority as proof that the service had been completed in compliance with the applicable laws. This completed certificate of service is prima face evidence that service on Devine was made in compliance with the law of the United Kingdom.[8] Indeed, courts generally "decline to look behind the certificate of service to adjudicate the issues of [the receiving country's] procedural law."[9] The presumption of proper service can only be overcome by strong and convincing countervailing evidence.[10]

Devine provides an affidavit to challenge the validity of service. He states that although he was in London at the time of service, he does not maintain a residence there and has not resided at the Brookford House for over 25 years. However, NordAq provides evidence that casts doubt on the accuracy of his statement. Records in the docket show that the Brookford House is currently titled in the names of Devine and his

---

[7]*Id.*

[8]*See Oak Point Partners, Inc. v. Lessing*, No. 11-CV-03328, 2012 WL 4121109, at *2 (N.D. Cal. Sept. 18, 2012) (citing *S.E.C. v. Internet Sols. for Bus. Inc*, 509 F.3d 1161, 1166 (9th Cir. 2007)). *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, *S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995) ("The Spanish Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service on [the defendant] was made in compliance with Spanish Law.").

[9]*Northrup King*, 51 F.3d at 1390.

[10]*S.E.C. v. Internet Sols. for Bus. Inc*, 509 F.3d 1161, 1165 (9th Cir. 2007).

-4-

wife Linda and that they purchased the residence only 15 years ago.[11]  It also points to numerous emails in the record between Devine and Linda where they discuss NordAq business and his plans to return "home" to Linda.[12]  Linda was residing at the Brookford House.  Given these facts, the court concludes that Devine has failed to present strong and convincing evidence to overcome the presumption of proper service that comes with the certificate of service executed by the United Kingdom's Central Authority.  The court therefore had jurisdiction over Devine when it filed an entry of default against him on February 16, 2017.

**B.     Good Cause to Vacate the Entry of Default**

Rule 55 states that a district court may set aside an entry of default for "good cause."  To determine whether there is good cause, a court must consider the following three factors: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiff will be prejudiced.[13]  This standard is the same one used to determine whether a default judgment granted after entry of default should be set aside for excusable neglect under Rule 60(b);[14] however, the test is more liberally applied in the Rule 55 context given that "there is no interest in the finality of the judgment with which to contend."[15]  The three "good cause" factors are disjunctive in nature; that is to say, the district court is free to deny relief from entry of default or default judgment if any of the three factors is true.[16]  The application of these three factors, however, is largely committed to the discretion of

---

[11]Doc. 61-1.

[12]Doc. 61-2.

[13]*U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

[14]*Id.* at 1091.

[15]*Id.* at 1091 n.1.

[16]*Id.* at 1091.

-5-

the court, and the determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[17] "'[A] case should, whenever possible, be decided on the merits.'"[18]

The court will start with the last two factors in the "good cause" test. As stated above, the court may deny Devine's request for relief from entry of default if he fails to show that he has a "meritorious defense." While the burden to show a meritorious defense is not "extraordinarily heavy," the defendant must nonetheless provide specific facts that constitute a defense.[19] A "mere general denial without facts to support it" is not sufficient.[20] The court agrees with NordAq that Devine's motion itself failed to properly allege a defense. However, in his reply, Devine notes that after the court originally vacated the entry of default, Devine filed an answer to the complaint and that the answer provides sufficient meritorious defenses, including that he is rightfully entitled to the money that NordAq alleges he misappropriated. That constitutes a sufficiently specific defense.

The court may also deny Devine's request if it concludes that the prejudice to NordAq resulting from setting aside the default is too great. NordAq argues that vacating the entry of default will make it easier for Devine to hide assets and consequently more difficult for it to recover from Devine. In other words, NordAq argues that it will suffer harm because of the additional time it will take to get a judgment. However, "[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case."[21] "A default judgment gives

---

[17]*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 395 (1993).

[18]*Mesle*, 615 F.3d at 1091(quoting *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984)).

[19]*Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

[20]*Id.*

[21]*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)

-6-

the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation."[22] NordAq does not show how setting aside the entry of default will hinder its ability to pursue its claims against Devine on the merits. Moreover, the court notes that Devine filed his request to vacate the entry of default within two months of its entry and before the court ruled on the motion for default judgment. The case remains in the early stages of litigation. Therefore, the court does not believe that the prejudice here is so great to warrant denying Devine's requested relief.

The final factor for the court to consider is Devine's culpability in failing to answer the complaint. "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer."[23] Ordinarily, the requisite intent is not met simply because the defendant made a conscious choice not to answer. Rather, to act with the requisite intent, the defendant must have acted in bad faith.[24] That is to say, the defendant's failure to answer is not intentional when he offers a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."[25] The requisite intent for a finding of culpability exists "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."[26] In the Ninth Circuit, however, the requisite intent can be assumed when the defendant is a legally sophisticated one or represented by counsel at the time of default. In such

---

[22]*Id.*

[23]*Id.* at 697 (emphasis in original).

[24]*Mesle*, 615 F.3d at 1092.

[25]*TCI*, 244 F.3d at 697.

[26]*Id.* at 698.

circumstances, the defendant presumably understands the consequences of not responding and therefore any failure to respond is indicative of culpability.[27]

NordAq argues that Devine can be considered legally sophisticated because of his extensive business experience and therefore the requisite culpable intent can be assumed here. The court is not persuaded that Devine is indeed a legally sophisticated individual. A defendant is legally sophisticated when he or she has experience in lawsuits involving issues similar to those in the current litigation, is otherwise sufficiently familiar with the federal legal process, is admittedly well aware of the need to respond to service, or has consulted with counsel at the time of default.[28] Here, while NordAq details Devine's prior experience as a CFO and CEO, there is nothing specific in the record to show that Devine has "experience as a defendant in a lawsuit involving issues similar to the ones present in this case" or that he has experience with being sued in federal court.[29] He was not represented by counsel at the time of default. Therefore, the court will not presume the requisite culpable intent here and will instead look for actual evidence of bad faith on Devine's part.

The record does not support a finding of bad faith. Devine was in the hospital at the time of service. The evidence suggests he was not attempting to avoid the lawsuit but rather trying to settle the matter by talking through the allegations in the complaint

---

[27]Melse, 615 F.3d at 1093.

[28]*See TCI*, 244 F.3d at 699 n.6 ("We have tended to consider the defaulting party's general familiarity with legal processes or consultation with lawyers at the time of the default as pertinent to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith."); *see also Clearwater 2007 Note Program, LLC v. Piell*, No. 1:12-cv-00208, 2014 WL 576098, at * 4 (D. Idaho Feb. 11, 2014) ("[The defendant] is a sophisticated businessman with experience as a defendant in a lawsuit involving issues similar to the ones present in this case. This is not [the defendant's] first time in federal court and the fact of his prior familiarity with the world of lending and lawsuits is of significance in this motion."); *CWT Canada II LP v. Danzik*, 2017 WL 1437557, at * 2 (D. Ariz. Apr. 24, 2017) ("Parties are also legally sophisticated when they are well aware of the dangers of ignoring service." (Internal quotation marks omitted)).

[29]*Clearwater 2007 Note Program, LLC,* 2014 WL 576098, at * 4.

-8-

with NordAq's representatives. There is nothing to suggest he was being evasive or manipulative or anything more than careless about getting a response to the court.

Even if the court were to find that Devine is legally sophisticated, and therefore could presume culpable intent, the court nonetheless retains its discretion to set aside an entry of default: "A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not."[30] Indeed, where a defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment.[31] Given the specific circumstances presented here, including Devine's medical condition at the time of service and his relatively prompt request to vacate the entry and his defenses to the complaint, the court believes setting aside the default so that the matter can proceed on the merits is the correct and equitable course of action.

NordAq requests that the court condition its order vacating the entry of default on Devine paying its attorney's fees associated with filing for default and defending against Devine's motion. The Ninth Circuit has held that it is appropriate to condition setting aside a default upon the payment of a sanction.[32] The requirement that the defaulting party pay court costs can ameliorate expenses caused by the delay and such a sanction can serve to "promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences."[33] Although the default did not prejudice NordAq's ability to bring its claims against Devine, it nonetheless harmed NordAq by adding legal expenses and creating new issues in this case, and while Devine's actions do not rise to the level of culpable conduct warranting denial of his

---

[30]*Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011).

[31]*Mesle*, 615 F.3d at 1089.

[32]*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546-47 (9th Cir.1988) (per curiam).

[33]*Id.*

-9-

request, the court finds that his failure to take any action on the complaint despite NordAq's warning is sufficient reason to warrant the imposition of sanctions associated with the entry of default. The record indicates, however, that Devine's attorney contacted NordAq's attorneys on the same day that default was entered and informed them that he believed there had been service of process issues and that Devine would like to vacate the entry of default to have an opportunity to defend the action on the merits. NordAq refused. Therefore, the court concludes that any sanctions associated with Devine's default should be limited to the fees associated with NordAq's motion for entry of default, and not those associated with the filing of the motion for default judgment or with defending this motion to vacate.

### IV. CONCLUSION

Based on the preceding discussion, Devine's motion at docket 39 to vacate the Clerk's entry of default is GRANTED. Consequently, the motion at docket 33 for default judgment is DENIED AS MOOT. Devine is hereby ORDERED to pay NordAq's attorney's fees associated with filing for entry of default. NordAq shall file a declaration, with supporting documentation, establishing its reasonable attorney's fees for its motion at docket 17 no later than July 31. Defendant may file an opposition to the amount of such fees by no later than August 7. The Court will take the matter under advisement and issue an order thereafter.

DATED this 24th day of July 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT