**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

NORDAQ ENERGY, INC.,

        Plaintiff and
        Counter Defendant,

    v.                               Case No. 3:16-cv-0267 SLG

PAUL L. DEVINE, *et al.*,

        Defendants and
        Counter Plaintiffs,        Case No: 3:17-cv-0031-SLG
                                     (Consolidated)

    and

PAUL L. DEVINE,

        Third-Party Plaintiff,

    v.

NUOXIN CO., LTD., *et al.*,

        Third-Party Defendants,

    and

JOHN EDWARD AITKEN KIDD,

        Third-Party Plaintiff,

    v.

NUOXIN CO., LTD., *et al.*,

        Third-Party Defendants.

## <u>ORDER RE MOTION TO DISMISS</u>

      Before the Court at Docket 103 is Plaintiff and Counter Defendant NordAq Energy,

Inc.'s Motion to Dismiss First Amended Counterclaim of Paul L. Devine.[1]  The motion has

---

[1] The First Amended Counterclaims are included in Mr. Devine's Second Amended Answer.  *See*

been fully briefed.[2]  Oral argument on the motion was held on November 1, 2017.[3]  For the following reasons the motion will be granted with leave to amend to the extent set forth herein.

## BACKGROUND

For purposes of this motion to dismiss, the facts as relevant to the motion are briefly summarized based primarily on Paul Devine's pleadings:

Paul Devine served as Chief Financial Officer ("CFO") of NordAq from January 2011 to August 2013 and as Chief Executive Officer ("CEO") of NordAq from September 2013 to July 2015.[4]  Mr. Devine served as a member of NordAq's Board of Directors from April 2011 to June 2015.[5]  Mr. Devine was tasked with raising capital for NordAq in order for NordAq to pursue oil and gas drilling opportunities.[6]   Mr. Devine's employment agreement with NordAq required NordAq to indemnify Mr. Devine for any legal fees arising out of a lawsuit related to his employment with NordAq.[7]   The employment agreement also included a termination clause that Mr. Devine alleges NordAq violated.[8]

---

Docket 101 (Second Am. Ans. and Countercls.).

[2] See Docket 104 (Memo.); Docket 112 (Opp.); Docket 116 (Reply).

[3] Docket 122 (Tr. of Oral Arg.).

[4] Docket 101 at 3.

[5] Docket 101 at 3, ¶ 8.

[6] Docket 101 at 28, ¶ 13.

[7] Docket 101 at 29, ¶ 14.

[8] Docket 101 at 29, ¶ 14.  Mr. Devine alleges that NordAq violated a termination clause by forcing Mr. Devine to resign as CEO of NordAq.  No written employment agreement appears to be in the record.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 2 of 25

Shortly after Mr. Devine was hired, NordAq granted Mr. Devine an incentive compensation package, which required NordAq to pay Mr. Devine 2.5 percent of all funds raised by Mr. Devine for NordAq.[9]

In the summer of 2014, Mr. Devine, on behalf of NordAq, entered into an agreement ("Subscription Agreement") with Nuoxin, an Anguilla limited liability company.[10] The Subscription Agreement stated that Nuoxin would invest $60 million into NordAq in two installments: $20 million ("Tranche A") was to be paid immediately and $40 million ("Tranche B") was to be paid by October 31, 2014.[11]

After paying the initial $20 million, Nuoxin, through its agent Doris Cheng, obtained seats on NordAq's Board of Directors and became NordAq's largest individual shareholder.[12] Mr. Devine maintains that Nuoxin and Ms. Cheng assured Mr. Devine several times that Nuoxin would provide the second installment of $40 million when due.[13] But Nuoxin defaulted on the Subscription Agreement and failed to provide the second $40 million installment.[14] Despite the default, Mr. Devine raised additional capital for

---

[9] Docket 101 at 37–38, ¶ 41.

[10] Docket 101 at 27, ¶ 9; 32, ¶ 25; Docket 116-1 (Subscription Agreement).

[11] Docket 101 at 32, ¶ 25.

[12] Docket 101 at 33, ¶ 28.

[13] Docket 101 at 34, ¶ 29.

[14] Docket 101 at 34, ¶ 30.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 3 of 25

NordAq from other investors.[15]  Mr. Devine alleges he was forced to resign in 2016 as a result of NordAq's misrepresentations.[16]

On November 18, 2016, NordAq initiated this action.[17]  Its Second Amended Complaint against Mr. Devine alleges claims for conversion, breach of fiduciary duty, and fiduciary fraud.[18]  NordAq alleges that Mr. Devine improperly used NordAq's assets for his personal use and improperly disbursed NordAq monies to various individuals who were in no way associated with NordAq.[19]

NordAq also filed complaints against Mr. Devine's friends in Texas and Alabama, alleging they received property from Mr. Devine that was purchased with misappropriated NordAq funds.[20]  Mr. Devine is not a named party in either case.

On April 19, 2017, Mr. Devine filed an answer to NordAq's Second Amended Complaint.[21]  On May 10, 2017, Mr. Devine filed an amended answer and asserted counterclaims against NordAq for fraud, misrepresentation, breach of contract and third party beneficiary, tortious interference with contract, intentional interference with

---

[15] Docket 101 at 35, ¶¶ 31, 32.

[16] Docket 101 at 46, ¶ 54(f).  NordAq alleges in its Second Amended Complaint that Mr. Devine resigned in July 2015.  Docket 23 at 31, ¶ 51.  In Mr. Devine's answer, he admits he resigned from his employment with NordAq, but "lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations."  Docket 101 at 11, ¶ 51.

[17] Docket 1 (Compl.).

[18] Docket 23 (Second Am. Compl.) at 33–36.

[19] Docket 23 at 6, ¶ 11.3–11.5.

[20] Docket 101 at 37, ¶ 39; *see also* Docket 112-6 (Texas Compl.); Docket 112-7 (Alabama Compl.).

[21] Docket 49 (Ans.).

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 4 of 25

prospective economic advantage, RICO, conspiracy and acting in concert, conversion, and punitive damages.[22]  On August 31, 2017, Mr. Devine filed a Second Amended Answer with First Amended Counterclaims ("FAC").  The FAC again pleads all the counterclaims against NordAq as alleged in the amended answer along with an additional claim labelled "discovery rule," which asserts that any applicable statute of limitations for Mr. Devine's claims was tolled until his "effective wrongful termination."[23]

On September 14, 2017, NordAq filed its Motion to Dismiss.  It seeks to dismiss all of Mr. Devine's counterclaims, apart from the breach of contract claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[24]

## LEGAL STANDARDS

NordAq seeks dismissal of most of Mr. Devine's counterclaims for failure to state a claim.  Under Rule 8(a), a complaint must contain a "short and plain statement of a claim showing that the [plaintiff] is entitled to relief."[25]  If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6).[26]

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27]  *Iqbal* does not

---

[22] Docket 68 (First Am. Ans. and Countercls.).

[23] Docket 101 at 56, ¶ 101.

[24] Docket 104 at 2.

[25] Fed. R. Civ. P. 8(a).

[26] Fed. R. Civ. P. 12(b)(6).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 5 of 25

require a litigant to prove his case in his pleading, but it requires the litigant to "state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"[28] The pleading must contain "enough facts to state a claim to relief that is plausible on its face."[29] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."[31] When considering a motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[32]

For a Rule 12(b)(6) motion, a court considers only the pleadings and documents incorporated into the pleadings by reference, as well as matters on which a court may take judicial notice.[33] "Even if a document is not attached to a complaint, if may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."[34] Moreover, a court can "consider certain materials—documents attached to the complaint, documents

---

[28] *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

[29] *Twombly*, 550 U.S. at 570.

[30] *Iqbal*, 556 U.S. at 678.

[31] *Id.*

[32] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[33] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[34] *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 6 of 25

incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."[35]

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[36] But leave to amend is properly denied as to those claims for which amendment would be futile.[37]

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud." Rule 9(b) also applies to claims for fraudulent misrepresentation.[38] "While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."[39] "Any averments which do not meet the standard should be 'disregarded' or 'stripped' from the claim[.]"[40]

The Court has diversity jurisdiction over NordAq's claims against Mr. Devine.[41] Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over "all other

---

[35] *Id.* Applying these rules, the Court will consider the Subscription Agreement in its entirety at Docket 116-1 and take judicial notice of the out-of-state complaints at Dockets 112-6 and 112-7. When considering this motion to dismiss, although both parties refer to additional documents, the Court has not considered any other documents and is not converting this motion to dismiss to a motion for summary judgment at this juncture.

[36] Fed. R. Civ. P. 15(a).

[37] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[38] *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (holding allegations for misrepresentation did not satisfy Rule 9(b)).

[39] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

[40] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1105).

[41] NordAq asserts that this Court has jurisdiction based on diversity of citizenship between NordAq and Mr. Devine and that the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. §

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 7 of 25

claims that are so related to claims in this action within such original jurisdiction[.]"  The

Court applies federal procedural law; as discussed further herein, Alaska substantive law

applies to all claims except the federal RICO claim.[42]

## DISCUSSION

Mr. Devine's FAC alleges the following ten counterclaims against NordAq: fraud;

misrepresentation; breach of contract and third party beneficiary; tortious interference

with contract; intentional interference with prospective economic advantage; RICO;

conspiracy and acting in concert; conversion; punitive damages; and discovery rule.[43]

### 1. Fraud and Intentional Misrepresentation

Mr. Devine asserts tort counterclaims against NordAq for fraud and

misrepresentation.[44]  NordAq maintains that Mr. Devine failed to plead these claims with

particularity as required by Rule 9(b).[45]

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity

the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  Allegations of fraudulent

---

1332(a)(1) and 28 U.S.C. § 1332(a)(2).  Docket 23 at 3–4, ¶ 6.

[42] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[43] Docket 101 at 44–56.  NordAq does not seek to dismiss Mr. Devine's counterclaim for breach of contract. *See* Docket 104 at 9.

[44] Mr. Devine's fraud claim alleges fraudulent misrepresentation.  Docket 101 at 44–46, ¶ 54.  The Court will consider the two claims together.  Mr. Devine also alleges in the FAC that "the Counter Defendants failed to use reasonable care when making the statement(s)."  Docket 101 at 47, ¶ 60.  To the extent Mr. Devine intended to also plead a claim for negligent misrepresentation, that claim has not been adequately pleaded and is dismissed. *See Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 670 (Alaska 2002).

[45] Docket 104 at 7.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 8 of 25

misrepresentation must be "accompanied by 'the who, what, when, where, and how' of the misconduct charged."[46]

Under Alaska law, fraudulent misrepresentation consists of "(1) a misrepresentation of fact or intention, (2) made fraudulently (i.e. with scienter), (3) for the purpose of inducing another to act in reliance, (4) with justifiable reliance by the recipient, (5) causing loss."[47] Mr. Devine asserts that NordAq misrepresented that "[he] would receive a raise in his salary once the transaction with Nuoxin was closed in 2014," and that "Mr. Devine's resignation was required in 2016 . . . that resulted in the effective wrongful termination of Mr. Devine."[48]

Mr. Devine has not identified who stated that he would receive a raise, and when that statement was made. Nor does he explain the terms of his employment contract with NordAq, the circumstances of his resignation, or precisely who made what fraudulent misrepresentations to him, and when. Accordingly, Mr. Devine's fraud and misrepresentation claims against NordAq as to his raise and resignation fail to state a claim with particularity and are dismissed.

Mr. Devine also alleges NordAq induced him to enter into an employment contract by representing that "[NordAq] would indemnify him for any litigation arising from his employment" and by representing that "[Mr. Devine] was entitled to 2.5% of the monies

---

[46] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[47] *Anchorage Chrysler Ctr., Inc.*, 129 P.3d at 914.

[48] Docket 101 at 45–46, ¶ 54(b), (f).

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 9 of 25

he was able to raise for NordAq."[49]   But Mr. Devine does not argue that these representations were false when made.   At oral argument, counsel for Mr. Devine stated "[a]t the time [John Kidd told Mr. Devine he would receive a 2.5 percent incentive compensation], Mr. Devine, I think rightfully, believed that it was a representation not a misrepresentation, took the job, did the work, and then didn't get paid from NordAq.  Now, retroactively, after forced out Mr. Devine and Mr. Kidd, they are saying that representation itself was invalid."[50] However, to be actionable, a statement that is alleged to be a misrepresentation must be misrepresented *when made*.[51]   Mr. Devine has failed to state a claim for fraudulent misrepresentation because he has not alleged that Mr. Kidd made false representations to him when he offered him the 2.5 percent incentive compensation. On this basis alone, dismissal of the fraud and misrepresentation claims would be warranted.

So as to provide some guidance in the event Mr. Devine seeks to amend to assert these claims, the Court also addresses the scope of the fraudulent misrepresentation claims under Alaska law in the context of employment disputes.   "Only where the duty breached is one imposed by law, such as traditional tort law duty furthering social policy, may an action between contracting parties sound in tort."[52]   [E]very contract breach

---

[49] Docket 101 at 45, ¶ 54(c).

[50] Docket 122 at 22–23.

[51] *See Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 914 n.21 (Alaska 2006) (discussing the requirement of scienter for misrepresentation claims requires the speaker "knows or believes that the matter is not as he represents it to be, does not have the confidence in the accuracy of his representation that he state or implies, or knows that he does not have the basis for his representation that he states or implies" (quotations and citation omitted)).

[52] *Jarvis v. Ensminger*, 134 P.3d 353, 363 (Alaska 2006).

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 10 of 25

cannot be turned into a tort."[53] "[P]romises set forth in a contract must be enforced by an action on that contract."[54]

Mr. Devine asserts that his case is similar to *Jarvis v. Ensminger*.[55] In *Jarvis*, Jarvis entered into an employment agreement with Ensminger, which included a performance incentive conditioned on Jarvis meeting certain sales benchmarks.[56] When Ensminger failed to pay the performance incentive, Jarvis sued. The Alaska Supreme Court held there was no breach of contract claim because it was undisputed that Jarvis had not met the specified sales benchmarks. But Jarvis had also alleged intentional misrepresentation; specifically, he alleged that Ensminger had made three misrepresentations about the basic terms of the contract that had induced Jarvis to sign it. The court held that the misrepresentation claim could proceed because it was based on alleged "tortious conduct separate and apart from [an alleged] failure to fulfill . . . contractual obligations."[57] Yet at the same time, the Court recognized "a violation of a duty arising from contract—such as the duty to pay wages under an employment or tender payment for goods—does not give rise to a tort claim."[58]

---

[53] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003).

[54] *Id.* (quoting *Alaska Pac. Assur. Co. v. Collins*, 794 P.2d 936, 946 (Alaska 1990)).

[55] Docket 112 at 24–25.

[56] *Jarvis*, 134 P.3d at 356.

[57] *Id.* at 363 (citing *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995)). The court also allowed Jarvis' promissory estoppel claim to proceed. *Id.* at 364.

[58] *Id.* at 363.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 11 of 25

This case is unlike *Jarvis* because Mr. Devine has not alleged claims that he relied on misrepresentations knowingly made by Mr. Kidd acting on behalf of NordAq that induced Mr. Devine to enter into an agreement with NordAq. Indeed, Mr. Devine has expressly disavowed any intent to pursue such claims.[59] Rather, he appears to be alleging a breach of the "duty to pay wages under an employment contract"; a claim which may only proceed in contract. Accordingly, Mr. Devine's fraud and misrepresentation claims against NordAq that relate to Mr. Devine's employment contract with NordAq are dismissed, with leave to amend only to allege a claim where an independent tort duty can be factually demonstrated. Mr. Devine's tort claims against NordAq seeking indemnification, the 2.5 percent incentive pay, or enforcement of any other terms in the employment contract are dismissed with prejudice.

Mr. Devine also asserts that additional fraudulent misrepresentations were made by Ms. Cheng and David Pfeiffer. He claims that Ms. Cheng "acted as an agent on behalf of both NordAq and Nuoxin" in stating that the "second funding was positive and would be successful."[60] A principal can be liable for the torts of its agents.[61] However, "for an agency relationship to exist, the agent must have [(1)] 'a power to alter the legal relations between the principal and third persons' . . . . [and, (2)] [t]he principal, in turn, must have 'the right to control the conduct of the agent with respect to matters entrusted to him.'"[62]

---

[59] Mr. Devine's lawyers also represent Mr. Kidd. *See NordAq Energy, Inc. v. Johnathon Edward Aitkin Kidd*, Case No. 3:17-cv-0031-SLG.

[60] Docket 101 at 45–46, ¶ 54(d).

[61] *Anderson v. PPCT Mgmt. Sys., Inc.*, 145 P.3d 503, 508 (Alaska 2006).

[62] *Manes v. Coats*, 941 P.2d 120, 123–24 (Alaska 1997) (quoting Restatement (Second) of Agency

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 12 of 25

In this case, Mr. Devine is alleging that Ms. Cheng, acting in her capacity as a majority shareholder, was an agent of NordAq.[63]  However, Mr. Devine has not alleged any facts demonstrating that Ms. Cheng had the power to alter the legal relations between NordAq and Mr. Devine; nor has he alleged any facts demonstrating that NordAq had control over Ms. Cheng's alleged statements.  Accordingly, a principal-agent relationship has not been adequately alleged to make NordAq liable for the alleged torts of Ms. Cheng.  Mr. Devine's claim for fraudulent misrepresentation against NordAq as it relates to Ms. Cheng's alleged conduct is dismissed without prejudice, with leave to amend to allege facts that would constitute an agency relationship.  In addition, any such claim must clearly set forth the circumstances of such alleged misrepresentations with particularity including the who, what, when, where, and how.

Mr. Devine's fraudulent misrepresentation claim against NordAq based on Mr. Pfeiffer's alleged statements in 2016 or later is without merit.  Mr. Devine alleges that Mr. Pfeiffer, an employee of NordAq, made fraudulent misrepresentations as an agent of NordAq.  Specifically, he asserts Mr. Pfeiffer falsely represented that "he would carry out the best interests of Clearview" and that he "and NordAq were concerned for Mr. Devine's well being in the latter part of 2016 and early 2017."[64]  Mr. Devine asserts these statements were "made in order to induce Mr. Devine into believing that NordAq would not try to take advantage of his debilitated state," and were made "to capitalize on Mr.

---

§§ 12, 14).

[63] Docket 101 at 45–46, ¶ 54(d).

[64] Docket 101 at 46, ¶ 54(d).

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 13 of 25

Devine's health crisis by maliciously filing baseless lawsuits against Mr. Devine and his interests."[65]

Mr. Devine has not pleaded any facts showing that Mr. Pfeiffer, as a NordAq employee, had "the power to alter the legal relationships" between Mr. Devine and NordAq. Moreover, Mr. Devine has not pleaded any facts to demonstrate how he relied on Mr. Pfeiffer's alleged statements, because according to Mr. Devine, he was forced to resign in 2016 and was no longer working for NordAq when at least some of these statements were allegedly made. Accordingly, Mr. Devine's fraudulent misrepresentation claim against NordAq as it pertains to statements allegedly made by Mr. Pfeiffer is dismissed without prejudice with leave to amend to allege facts that demonstrate an agency relationship as well as reliance together with all other requisite elements for such a claim.

### 2. Conversion

Mr. Devine also alleges a counterclaim against NordAq for conversion. He asserts "Mr. Devine had a possessory interest in his stock holdings of NordAq, in his agreed-to salary, and in his agreed-to incentive compensation . . . [and] Counter Defendants intentionally interfered with Mr. Devine's right to possess that property."[66] Mr. Devine also alleges that NordAq committed conversion by failing to pay Mr. Devine more than $1

---

[65] Docket 101 at 46, ¶ 54(d); Docket 112 at 15.

[66] Docket 101 at 55, ¶ 94.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 14 of 25

million in incentive compensation and failing to pay more than $1 million in salary as a result of his wrongful termination.[67]

To establish a claim for conversion under Alaska law, a plaintiff must establish "(1) that []he had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property."[68]

Mr. Devine's conversion claims all appear to arise directly from NordAq's alleged breach of the employment contract.[69] However, "every contract breach cannot be turned into a tort" due to the "consequential damages that would flow from [such] tort claims and from [the related] contract claims [that] significantly overlap."[70] As stated above, Mr. Devine cannot bring a tort claim against NordAq for its alleged breach of his employment contract with NordAq; rather, he must plead a sufficient factual basis to demonstrate the existence of an independent duty.[71] Accordingly, Mr. Devine's conversion claim is dismissed. To the extent it is based on Mr. Devine's contract with NordAq, it is dismissed with prejudice.

---

[67] Docket 101 at 55, ¶ 95.

[68] *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000).

[69] Mr. Devine does not clearly state whether the stock holdings in NordAq were included in the employment agreement or another agreement. Nonetheless, Mr. Devine has not alleged sufficient facts to plead a viable claim for conversion for his stock holdings.

[70] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003).

[71] *See supra* pp. 11–12.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 15 of 25

### 3. **Third Party Beneficiary**

Mr. Devine's third counterclaim against NordAq includes a claim that he is a third party beneficiary of the Subscription Agreement between NordAq and Nuoxin.[72]  Under Alaska law, a court looks to the objective motives or intent of the parties to determine whether a party is an intended third-party beneficiary.[73]   A court "will recognize a third-party right to enforce a contract upon a showing that the parties to the contract intended that at least one purpose of the contract was to benefit the third party."[74]  In *Smallwood*, the Alaska Supreme Court explained that it is the intent of the promisee that is key.[75]

In this case, Mr. Devine alleges that the Subscription Agreement between NordAq, the promisee, and Nuoxin, the promisor, "expressly stipulated . . . that Mr. Devine would be entitled to 2.5% of the monies paid by Nuoxin[.]"[76]  Mr. Devine further alleges in his FAC that "at least one purpose of the contract was to benefit Mr. Devine."[77]  Although Mr. Devine alleges one of the purposes of the agreement was to benefit him, the agreement does not contain any such indication.  The only portion of the agreement that mentions

---

[72] Docket 101 at 48, ¶¶ 67–68.

[73] *Rathke v. Corrections Corp. of Am., Inc.*, 153 P.3d 303, 310 (Alaska 2007).  NordAq asserts that this Court should apply Delaware law to this issue under the internal affairs doctrine.  Docket 104 at 12 n.2.  However, Mr. Devine's third party beneficiary claim does not involve the internal affairs of NordAq.  *See McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987) ("The internal affairs doctrine has no applicability in [corporations and individuals entering into contracts, committing torts, and dealing in personal and real property].").  Accordingly, Alaska law applies.

[74] *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 324 (Alaska 2006).

[75] *Id.* at 325.

[76] Docket 101 at 48–49, ¶ 68.

[77] Docket 101 at 49, ¶ 68.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 16 of 25

Mr. Devine's 2.5 percent compensation is in a schedule attached to the actual agreement; it is not found in the body of the agreement.[78]   No other provision in the Subscription Agreement supports the allegation that NordAq intended to benefit Mr. Devine by entering into the Subscription Agreement with Nuoxin.   Mr. Devine has not adequately pleaded facts that would plausibly support a claim that he was a third party beneficiary of the Subscription Agreement.[79]   Accordingly, Mr. Devine's third party beneficiary claim is dismissed.[80]

### 4. <u>Tortious Interference with Contract and Intentional Interference with Prospective Economic Advantage</u>

Mr. Devine alleges counterclaims for tortious interference with a contract and intentional interference with prospective economic advantage.   Both claims allege that Nuoxin, Ms. Cheng, and Mr. Pfeiffer interfered with Mr. Devine's relationship and contract with NordAq.[81]   Mr. Devine's theory of liability as to NordAq is that NordAq is vicariously liable for the interference made by Nuoxin, Ms. Cheng, and Mr. Pfeiffer.[82]

To state a claim for tortious interference with a contract under Alaska law, Mr. Devine must plead "(1) an existing contract between the plaintiff and a third party; (2)

---

[78] Docket 116-1 at 36.

[79] Mr. Devine also alleges that he was an intended third-party beneficiary of his incentive compensation agreement with NordAq.  Docket 101 at 49, ¶ 69.  However, there is no plausible third-party beneficiary claim as to Mr. Devine's incentive compensation agreement because Mr. Devine cannot be a third party beneficiary to his own agreement.

[80] Mr. Devine may attempt to plead a viable third party beneficiary claim under the Subscription Agreement, although the Court is quite skeptical, based on the facts alleged to date, that any such claim could be viable.

[81] Docket 101 at 51, ¶ 79.

[82] Docket 112 at 27.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 17 of 25

defendant's knowledge of the contract and intent to induce a breach; (3) breach; (4) wrongful conduct of the defendant causing the breach; (5) damages; and (6) absence of privilege or justification for the defendant's conduct."[83]  Mr. Devine has pleaded that he had a contract with NordAq; however, he has not pleaded that there was any contract that existed between him and either Nuoxin, Ms. Cheng, or Mr. Pfeiffer.  Moreover, he concedes in his opposition that the "tortious interference claims are primarily against Nuoxin, Cheng, and Pfeiffer."[84]  The Court is unaware of any Alaska authority that would permit NordAq to be held vicariously liable for any alleged interference by Nuoxin, Ms. Cheng, or Mr. Pfeiffer with NordAq's contract with Mr. Devine.  In light of the foregoing, Mr. Devine's claim for tortious interference with a contract against NordAq is dismissed.  To the extent it is based on Mr. Devine's contract with NordAq, it is dismissed with prejudice.[85]

Mr. Devine has also failed to state a valid claim against NordAq for tortious interference with a prospective business opportunity under Alaska law.  To establish a claim for tortious interference with a prospective business opportunity, Mr. Devine must show "(1) an existing prospective business relationship between it and a third party; (2) defendant's knowledge of the relationship and intent to prevent its fruition; (3) failure of

---

[83] *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1269 (Alaska 2016) (citation omitted).

[84] Docket 112 at 27.

[85] At oral argument, counsel for Mr. Devine acknowledged "that a claim against NordAq [for the acts of Nuoxin and Ms. Cheng] for intentional interference of a contract which NordAq is a party cannot stand under Alaska law, apart from some potential vicarious liability theory[.]" Docket 122 at 31–32.  Mr. Devine cites no Alaska case that would impose vicarious liability on a contracting party for the tortious interference of its own contract.  Accordingly, this claim is futile.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 18 of 25

the prospective relationship to culminate in pecuniary benefit to the plaintiff; (4) conduct of the defendant interfering with the prospective relationship; (5) damages caused by the defendant; and (6) absence of privilege or justification for the defendant's conduct."[86]

Mr. Devine's FAC alleges that "NordAq, Cheng, Nuoxin and Pfeiffer knew about [Mr. Devine's relationship with NordAq and its shareholders] and intended to prevent Mr. Devine from growing these relationships, and intentionally disrupted them."[87]  However, Mr. Devine does not identify any specific "prospective business relationship" or lost deal between him and an identifiable third party.  Instead, he generally alleges that NordAq caused reputational harm to him among NordAq's shareholders.[88]  Accordingly, Mr. Devine's counterclaim for tortious interference with a prospective business opportunity is dismissed.  In light of Mr. Devine's acknowledgement at oral argument that he had no facts that could support a specific interference claim that would be maintained under Alaska law, the dismissal of this claim is with prejudice without leave to amend.

### 5. **RICO**

Mr. Devine next asserts a counterclaim against NordAq under the Racketeer Influenced and Corrupt Organizations Act ("RICO").[89]  A civil RICO claim consists of the following: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity

---

[86] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003).

[87] Docket 101 at 51, ¶ 79.

[88] At oral argument, counsel for Mr. Devine acknowledged that the only interference Mr. Devine had was "the reputational harm that he's lost with those particular [NordAq] shareholders."  Docket 122 at 33.

[89] 18 U.S.C. §§ 1341, 1961 *et. seq.*

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 19 of 25

(known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'"[90]

"Racketeering activity" includes mail fraud, which occurs "whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice.'"[91]

Mr. Devine alleges Nuoxin, Ms. Cheng, and Mr. Pfeiffer "are using NordAq to run a litigation smear campaign against Devine by wrongfully suing him and/or his interests in Alaska, Texas, and Alabama, in order to financially punish Mr. Devine, wrongfully seek recovery of the compensation he properly earned while employed by NordAq, and increase the time and expense he is incurring to protect his name and his interests from baseless lawsuits."[92]  Mr. Devine also alleges that Mr. Pfeiffer attempted to prevent him from defending himself in this case by signing misleading affidavits in support of a default judgment against him.[93]  Mr. Devine alleges that "Counter Defendants have used mail and wire fraud to perpetuate their racketeering scheme."[94]

Although the Ninth Circuit has not directly ruled on whether filing documents with a court can constitute a RICO claim, other federal courts have held that these litigation

---

[90] *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citing 18 U.S.C. §§ 1964(c), 1962(c)).

[91] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341).

[92] Docket 112 at 29.

[93] Docket 112 at 6.

[94] Docket 112 at 6.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 20 of 25

activities cannot constitute RICO violations under 18 U.S.C. § 1962 (a)-(c).[95]  One district

court reasoned:

> Plaintiffs' interpretation of RICO . . . would result in the inundation of federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any . . . litigant immediately sues opponents for RICO violations. . . . [L]itigants might hesitate to avail themselves of the courts and available legal remedies or be unable to find representation to help vindicate their rights.  Moreover, allowing [such cases] . . .  would inappropriately by pass [sic] the state tribunal. . . .[96]

The Court agrees with this reasoning.  Moreover, Mr. Devine is not a named party to

either the Texas or Alabama lawsuits.[97]  Accordingly, Mr. Devine's RICO claim against

NordAq is dismissed.  Mr. Devine may attempt to plead a viable RICO claim against

NordAq, but it must not be based on the use of the mail or wire to submit filings to a court,

which claim is dismissed with prejudice.

### 6. Conspiracy

Mr. Devine alleges claims for conspiracy and acting in concert claims, stating "[t]he

ultimate unlawful objective was to perpetuate the racketeering scheme against Mr.

Devine."[98]  However, since he has not pleaded a claim pursuant to 18 U.S.C. § 1962 (a)-

---

[95] *See Smith v. HSBC Bank USA, N.A.*, 2017 WL 3840273 at *5 (S.D. Ga. 2017) (dismissing a RICO claim because "courts have consistently refused to recognize as wire or mail fraud even litigation activities that rise to the level of malicious prosecution simply because the mail or wires were used"); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014); *see also First Pac. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988) (holding that threat of derivative lawsuit is not a predicate act for RICO purposes).

[96] *Smith*, 2017 WL 3840273 at *5 (quoting *Curtis & Assoc., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173 (E.D.N.Y. 2010), *aff'd*, 443 Fed.Appx. 582 (2d Cir. 2011)).

[97] *See* Docket 112-6 at 2 (naming Cheryl White as defendant); Docket 112-7 at 4 (naming Donna Denise Kress as defendant).

[98] Docket 101 at 54, ¶ 89.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 21 of 25

(c), Mr. Devine cannot assert a conspiracy claim under 18 U.S.C. § 1962(d) and this claim will be dismissed.[99]

Mr. Devine also asserts that the misrepresentations made by Mr. Pfeiffer were "made conspiratorially with NordAq and others—seeking to capitalize on Mr. Devine's health crises."[100] Mr. Devine also claims that NordAq conspired with Mr. Pfeiffer, Nuoxin and Ms. Cheng to tortiously interfere with his employment contract.[101] However, as discussed above, Mr. Devine's misrepresentation claims relate to his breach of employment contract claim; he has not pleaded any separate viable fraud and misrepresentation claims.[102] Moreover, he has not pleaded a viable claim for tortious interference with a contract.[103] Accordingly, Mr. Devine's claims for conspiracy are dismissed.

Mr. Devine also asserts that NordAq, Ms. Cheng, Mr. Pfeiffer, and Nuoxin are jointly and severally liable for their tortious conduct under a cause of action for acting in

---

[99] *See* 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."); *see also Davis v. King Craig Trust*, 2017 WL 2209879 at *3 n.9 (Alaska 2017) ("Whether 'civil conspiracy' actually constitutes a separate wrong is not something we need to address today.").

[100] Docket 112 at 15.

[101] Docket 101 at 49.

[102] *See supra* pp. 8–14. At oral argument, counsel for Mr. Devine stated the following regarding the conspiracy claim: "I think, Your Honor, that what I'm driving at is that if Nuoxin and Doris Cheng, the scheme that's been enacted to take over NordAq and to act to the detriment of Mr. Devine, if they have joint and several liability with NordAq for doing that, then their independent bad acts that they have taken, their wrongful tortious conduct, in terms of their interference they— we believe—we have a good intentional interference claim against Nuoxin and Doris Cheng." Docket 122 at 30.

[103] *See supra* pp. 17 –18.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 22 of 25

concert.[104]  However, acting in concert is not a separate cause of action and cannot be alleged on its own.[105]  Mr. Devine appears to argue in his opposition to the motion to dismiss that NordAq acted in concert by aiding and abetting.[106]  Alaska law follows the Restatement (Second) of Torts § 876, which provides that a person can be liable for the tortious conduct of another when he "does a tortious act in concert with the other" or "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other" or "gives substantial assistance to the other in accomplishing a tortious result."[107]  However, as previously discussed, Mr. Devine has not pleaded a viable tort claim against NordAq.  Nor has he alleged facts that would demonstrate that NordAq knew that certain specified acts were being performed by the other parties, which acts constituted a breach of duty.  Nor has he alleged facts that would demonstrate that NordAq provided substantial assistance with respect to such acts.  Accordingly, Mr. Devine's claim for conspiracy and acting in concert are dismissed.

### 7. __Punitive Damages and Discovery Rule__

Mr. Devine alleges that due to NordAq's intentional and outrageous actions, he is entitled to punitive damages.[108]  However, apart from the breach of contract claim, the

---

[104] Docket 101 at 53–54, ¶¶ 89–92; Docket 112 at 15.

[105] *See Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 348 (Alaska 1982) (holding that individual who is liable for acting in concert is individually liable for underlying tort); *see also Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999) (holding "acting in concert" is an additional element to prove a civil conspiracy claim).

[106] Docket 112 at 15–16.

[107] *Ellison v. Plumbers and Steam Fitters Union Local 375*, 118 P.3d 1070, 1077 n.36 (Alaska 2005).

[108] Docket 101 at 56, ¶¶ 98–99.

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 23 of 25

Court has dismissed all claims at this juncture, albeit several with leave to amend.[109] Accordingly, Mr. Devine's claim for punitive damages is dismissed without prejudice with leave to amend.

Mr. Devine also asserts that his claims are not barred by the statute of limitations because he did not discover the representations until his effective wrongful termination.[110] The discovery rule is not a cause of action.[111] Whether any claim is barred by the statute of limitations is not the subject of this order.

## CONCLUSION

Therefore, for the foregoing reasons IT IS ORDERED that NordAq's Motion to Dismiss at Docket 103 is GRANTED. The following claims by Mr. Devine against NordAq are dismissed herein with prejudice and without leave to amend: all tort claims against NordAq seeking indemnification, the 2.5 percent incentive pay or enforcement of any other terms of the employment or incentive contract; tortious interference with Mr. Devine's employment contract with NordAq; intentional interference with prospective economic advantage; and RICO claims based on the use of the mail or wire to submit filings to a court. Leave to amend is otherwise granted as set forth herein.

---

[109] *See Lull v. Wick Const. Co.*, 614 P.2d 321, 325 (Alaska 1980) (holding that breach of contract that is not tortious does not warrant punitive damages).

[110] Docket 101 at 56, ¶ 101.

[111] *See Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982) (holding that the discovery rule provides that "the statute of limitations for legal malpractice does not begin to run until the client discovers, or reasonably should discover, the existence of all the elements of his cause of action").

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 24 of 25

Mr. Devine may file a Third Amended Answer and Counterclaim(s) consistent with the terms of this order, but must do so no later than **March 13, 2018**. If Mr. Devine fails to file a Third Amended Answer and Counterclaim(s) that is consistent with the terms of this order by that date, his case against NordAq will proceed solely under the breach of contract claim.

DATED this 27th day of February, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:16-cv-00267-SLG, *NordAq v. Devine, et al.*
Order re Motion to Dismiss
Page 25 of 25